***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback. The appealing party has shown good grounds to reconsider the evidence; therefore, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the undersigned Deputy Commissioner and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. The parties were subject to the Workers' Compensation Act at the time of the alleged injury and/or occupational disease.
4. An employer/employee relationship existed between the parties at the time of the alleged injury and/or occupational disease.
5. The employer in this case is Idaho Timber Corporation and the carrier and/or claims administrator liable on the risk is Argonaut Insurance Co.
6. The employee allegedly sustained an injury on or about March 13, 2000.
7. The employee's average weekly wage is $515.00 per week, yielding a compensation rate of $343.22.
8. The nature of the alleged injury or occupational disease is a back injury.
9. The employee was paid the entire day of the alleged injury and/or onset day of the alleged occupational disease.
10. The employee last worked for Idaho Timber of North Carolina, Inc. on March 15, 2000.
11. Documents stipulated into evidence include the following:
a. Stipulated Exhibit #1 Plaintiff's medical records
b. Stipulated Exhibit #2 Employee History Form
c. Stipulated Exhibit #3 March 3, 2000 General Work Rules
 d. Stipulated Exhibit #4 March 8, 2000 Written record of verbal warning
 e. Stipulated Exhibit #5 Employment Security Commission decision, of which plaintiff only stipulates to the authenticity of the same.
12. The depositions of Dr. J. Lawrence Frank and Dr. Robert J. Wilson are a part of the evidentiary record in this case.
 ***********
Based on the evidence of record and the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACTS
1. At the time of the deputy commissioner hearing in this matter, plaintiff worked as a supervisor in a lumber yard owned and operated by defendant-employer.
2. On March 13, 2000, plaintiff was working for defendant-employer when one of the "lines" became "hung up" with lumber. Plaintiff began pushing a load of lumber weighing between 1,000 and 1,500 pounds on a steel dolly over the concrete floor.
3. While pushing the load of lumber, the dolly became stuck in a ridge or "rut" on the concrete floor. Plaintiff put his foot up against the conveyor belt, put his chest up against the wood, and forcibly pushed the dolly or cart out into the floor. At that time, plaintiff experienced a sharp pain in his lower back, resulting in a specific traumatic incident of the work assigned.
4. Plaintiff approached his supervisor, Justin Moon, and told him that he had felt pain in his back when he was pushing a cart of wood. Plaintiff was directed to a first aid kit where he found some Tylenol.
5. Plaintiff worked for the remainder of the day on March 13, 2000 and did not believe his injury was serious at the time.
6. Mr. Moon had responsibility for recording in writing any reports of injury from those whom he supervised, including plaintiff. Mr. Moon failed to record this incident and likewise failed to record in writing any events noted herein.
7. Plaintiff did not work on March 14, 2000, due to a previous appointment that he had made. Defendants offered no testimony to the effect that plaintiff's absence on this date was without permission, or not approved in advance.
8. On March 14, 2000, plaintiff awoke and his back was extremely stiff. He remained out of work on that date and returned to work on March 15, 2000.
9. On March 15, 2000, plaintiff reported to work. His back continued to bother him, and he reported his problems to another supervisory employee, Jose Cruz. Mr. Cruz recollected that plaintiff reported that he was still sore "from what had happened on Monday" and that he "mentioned something" about having injured his back at work. Plaintiff told Mr. Cruz that he would try to work through the remainder of the day.
10. By approximately noon, plaintiff was unable to work and his "back was killing him." He asked Mr. Cruz the name or location of the medical provider to which he should report for evaluation and treatment. Mr. Cruz told plaintiff that he would need to wait for Justin Moon who was the immediate supervisor of Mr. Cruz.
11. Plaintiff waited for Mr. Moon in Mr. Moon's office. When Mr. Moon arrived, plaintiff asked for permission to see a doctor and directions regarding medical treatment. Mr. Moon responded, "You said your back was hurt on Monday, this is Wednesday, what are we supposed to do about it?"
12. Plaintiff was upset at this response and felt that Mr. Moon was either unwilling or unable to assist him in seeking medical attention, so he clocked out, went home, and discussed the situation with his wife.
13. Later on March 15, 2000, plaintiff went to social services to see if he could qualify for assistance or benefits such as Medicaid. On advice of the caseworker that assisted him, plaintiff later went to the emergency room at Maria Parham Hospital in Henderson, North Carolina.
14. Plaintiff reported pain in his lower back which radiated to his leg upon presentation at Maria Parham Hospital. Prior to this date, plaintiff had no history of back problems or any injury to his back. Plaintiff returned to the emergency room on two later occasions, and he was referred to an orthopedic surgeon in Durham, Dr. J. Lawrence Frank, following his third effort to obtain treatment.
15. Plaintiff was unable to return to work after March 15, 2000; he was given work restrictions including no heavy lifting.
16. Dr. Frank assumed plaintiff's medical care beginning on or about April 19, 2000, and continued to supervise the same until referring plaintiff to Dr. Robert Wilson.
17. Plaintiff reported that his injury occurred while pushing lumber at work on March 13, 2000 to both Dr. Frank and Dr. Wilson.
18. Dr. Frank first prescribed physical therapy and medications which did not give the plaintiff relief from his symptoms. Dr. Frank then referred plaintiff for a lumbar spine MRI, which revealed that plaintiff suffered from an annular tear at L4-5 and disc bulges at L2-3, L3-4 and L4-5.
19. Dr. Frank referred plaintiff to Dr. Wilson, who specializes in physical medicine and rehabilitation, for consideration of epidural steroid injections and IDET (Intra-discal electrical thermal annuloplasty).
20. After performing one epidural steroid injection, Dr. Wilson recommended that plaintiff undergo a lumbar discogram/CT scan and referred him to an in-house pain psychologist, Dr. Phillips. Following the discogram/CT, Dr. Wilson recommended that plaintiff proceed with the IDET procedure. Dr. Wilson performed this procedure at L4-5 and L5-6 on September 8, 2000.
21. IDET is a medically recognized procedure whereby a cannula is inserted into the disc space and the annulus of the spine is heated in an effort to "tighten" it and re-form it to its pre-injury shape. IDET was medically indicated, was a reasonable and necessary treatment option, and is approved for treatment of annular tears by the Food and Drug Administration.
22. Following the IDET procedure, plaintiff experienced an increased burning sensation in his back. Dr. Wilson administered another cortisone injection on September 8, 2000. On this date, Dr. Wilson noted that plaintiff had not improved, that he was "more frustrated, crying and depressed and suffered from "situational depression."
23. Dr. Wilson evaluated plaintiff on November 29, 2000, at which time, he recommended that he see Dr. Liebelt, an orthopedic surgeon specializing in fusion of the lumbar spine.
24. Dr. Wilson opined to a reasonable degree of medical certainty, and the Full Commission so finds, that plaintiff's back injuries were caused by the specific traumatic incident of March 13, 2000 while plaintiff was moving a bundle of lumber. Additionally, Dr. Wilson opined that plaintiff's condition prevented plaintiff from working his job with defendant-employer throughout his course of treatment of plaintiff.
25. Dr. Frank testified to a reasonable degree of medical certainty, and the Full Commission so finds, that the specific traumatic incident which plaintiff sustained on March 13, 2000 resulted in the injuries which Dr. Frank diagnosed, and that the specific traumatic incident of March 13, 2000 also significantly aggravated plaintiff's pre-existing degenerative disc problem.
26. Dr. Wilson's deposition testimony included the information that Dr. Ralph Liebelt performed fusion surgery on plaintiff on May 11, 2001, and plaintiff remains under his care.
27. By the greater weight of the competent evidence the Full Commission finds that plaintiff's injury or specific traumatic incident of March 13, 2000, rendered him totally disabled from employment beginning March 16, 2000 and continuing.
28. Defendants offered vague evidence regarding positions or jobs that allegedly were available to the plaintiff following his injury. Defendants' witnesses, however, conceded that most, if not all, of these jobs involved duties outside of plaintiff's work restrictions. Moreover, defendants offered no medical testimony indicating that plaintiff was capable of performing these jobs.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has established by the greater weight of the evidence that he suffered an injury as the result of a specific traumatic incident of the work assigned on or about March 13, 2000. N.C.G.S. § 97-2(6).
2. Plaintiff has established by the greater weight of the evidence that he was disabled from employment as a result of his specific traumatic incident beginning March 16, 2000 and is entitled to receive ongoing total disability compensation at the rate of $343.22 per week. N.C.G.S. § 97-29.
3. Plaintiff is entitled to have defendants pay for all medical care related to his specific traumatic incident necessary to effect a cure, give relief, and/or lessen his period of disability. Said care shall expressly include that which has been rendered at the direction or referral of Dr. J. Lawrence Frank, Dr. Robert J. Wilson, and Dr. Ralph Liebelt. N.C.G.S. § 97-25.
4. Any issues regarding a permanent partial impairment rating or benefits flowing therefrom are hereby reserved for future determination by the Commission. N.C.G.S. § 97-31.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability benefits at the compensation rate of $343.22 per week from March 16, 2000, to the present and continuing until such time as he is no longer disabled or until further Order of the Industrial Commission. Said amount that has accrued shall be paid in one lump sum, subject to attorney's fees approved herein.
2. Defendants shall provide plaintiff all reasonable and necessary medical care related to his specific traumatic injury including all care rendered or provided at the direction of Drs. J. Lawrence Frank, Robert J. Wilson and Ralph Liebelt.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the amount awarded plaintiff is hereby APPROVED for plaintiff's counsel. This amount shall be paid in one lump sum directly to plaintiff's counsel.
4. Defendants shall pay the costs due the Commission.
This the ___ day of October 2002.
 S/____________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER